CITY OF WORCESTER *vs.* WORCESTER MUTUAL FIRE IN-
SURANCE COMPANY.

An application by a town for insurance on a school-house stated, in answer to an interroga-
tory, that the ashes were taken up in metallic vessels which were not allowed to stand on
wood with ashes in them, and that the ashes, if deposited in or near the building, were
in brick or stone vaults; and concluded with a memorandum that "if ashes are allowed
to remain in wood, the insurers will not assume the risk;" and was made part of the con-
tract of insurance. There were no vaults of brick or stone, and the ashes were generally
deposited on the ground, at a distance from the building; but the boy employed by the
school committee to take charge of the building, for two or three weeks before the fire,
without orders, placed the ashes in a wooden barrel in a shed adjoining the school-house.
*Held,* that the insurers were discharged.

ACTION OF CONTRACT on a policy of insurance, dated Febru-
ary 10th 1855, upon a school-house against loss by fire, " accord-
ing to the true intent and meaning of" the rules annexed to the
policy, and the application for insurance, which was made part
of the contract.

By those rules " policies shall become void and of no effect
for any of the following causes or reasons, to wit:

" If the application shall not contain a full, fair and substan-
tially a true representation of all the facts and circumstances
respecting the property, so far as they are within the knowledge
of the assured, and material to the risk.

" Or if the assured shall withhold or conceal any such mate-
rial facts or circumstances within his knowledge.

" Or if the state of things in or about buildings insured be
so altered or changed by the advice, consent or procurement of
the assured, as to cause a material increase of the risk.

" Or if a loss shall happen through the gross, wanton or wil-
ful misconduct of the assured, or through his gross or culpable
negligence, or by means of his intoxication."

The twelfth interrogatory in the application was this: " Are
your ashes taken up in metallic vessels which are not allowed to
stand on wood with ashes in them? And if deposited in or
near the building in vaults of brick or stone?" The answer to
both these questions was in the affirmative.

At the end of the application, immediately above the signa-ture, was the following: "NOTE. If ashes are allowed to re main in wood, or if fireplaces where stoves are substituted are not well secured by incombustible materials, and the wood where stove pipe is carried near to it is not thoroughly pro-tected, the company will not assume the risk."

The parties admitted the execution of the policy and applica-tion; the destruction of the school-house by fire on the 12th of January 1856; and the right of the plaintiffs to recover, unless the following facts, with such inferences as might be drawn therefrom, constituted a defence.

"About six weeks before the destruction of the building a school was opened therein, and kept until the building was destroyed. A boy was hired to make the fires and take charge of the school-house during the continuance of the school; but no directions were given him by any one as to the disposition of the ashes. For almost three weeks from the opening of the school he threw them into a pile on the ground a rod or more from the building: but two or three weeks before the burning of the building a legal voter of the district in which the school-house was situated placed a wooden barrel in the wood-house which adjoined the school-house, and in which the wood for fuel was kept, and agreed with the boy to pay him a stipulated price if he would put the ashes, as they accumulated, in the barrel, which the boy from that time did, until the building was de-stroyed. There were no vaults of brick or stone or other incom-bustible material in or about the school-house, or provided elsewhere for the deposit of the ashes. The wood-house was a building of wood, and it was in flames when the fire was first discovered, and before it had reached the school-house.

"The prudential committee of the district at the time of the destruction of the school-house, who had held the same office in the previous year, soon after the school for the winter of 1854–55 was opened directed the person who then made the fires to throw the ashes upon the ground on the spot before referred to, and his directions were complied with during that winter."

*C. Devens, Jr.* (*G. F. Hoar* with him,) for the plaintiffs. The

City of Worcester *v.* Worcester Mutual Fire Insurance Company.

depositing of the ashes at a safe distance from the building on the ground was, while it continued, a substantial compliance with the contract. *Houghton* v. *Manufacturers' Mutual Ins. Co.* 8 Met. 114. *Underhill* v. *Agawam Mutual Fire Ins. Co.* 6 Cush. 440 The plaintiffs' designation of this spot for the purpose was manifestly known to the boy who afterwards had charge of the fires. His acts in delivering the ashes to a stranger by placing them in a receptacle provided by him, and the keeping of such receptacle in dangerous proximity to the building by such stranger, without right and in violation of the known rules of the plaintiffs, cannot constitute a defence. The warranty can be held to extend only to matters within the knowledge and control of the insured. This is put beyond dispute by the note at the end of the application, which limits the exemption of the insurers from liability to the single contingency " if ashes are allowed to remain in wood."

*C. Allen,* for the defendants.

DEWEY, J.* The answers and stipulations contained in the application of the plaintiffs for their policy are made an essential part of the contract between these parties. To the twelfth interrogatory, the plaintiffs by their answer had stated that " their ashes were taken up in metallic vessels, which were not allowed to stand on wood with ashes in them ; and that, if deposited in or near the building, they were deposited in vaults of brick or stone." Upon the face of the application, and above the signature of the defendants to the application, was the following, " If ashes are allowed to remain in wood, the company will not assume the risk." This policy was therefore directly affected by the manner in which the plaintiffs used the insured property in reference to the stipulations above referred to. It is conceded that the plaintiffs had no vaults of brick or stone for the deposit of ashes. Had they had such, and had the usual course been to deposit their ashes therein, an unauthorized departure in one or two instances by their servant might not have affected the policy. But under the circumstances of the present case,

---

\* THOMAS, J. did not sit in this case.

placing the ashes for a period of two or three weeks continu-ously, and up to the time of the loss by fire, in a wooden barre, in the wood-house, which adjoined the school-house, and in which the fuel for the school-house was kept, by the agent employed by the defendants to make the fires and take charge of the school-house, was in direct violation of the terms of the contract for insurance, and must preclude the plaintiffs from recovering for the loss which has occurred.

*Judgment for the defendants.*